Case No. 14-1251, Chris Stovic, Petitioner v. RRRB et al. Mr. Walker for the amicus curiae, Ms. Cheston for the respondents. Good morning, and may it please the Court, Burden Walker, amicus curiae appointed by the Court to make arguments in favor of Petitioner Chris Stovic. The Railroad Retirement Act generally provides that beneficiaries may, after exhausting all available administrative remedies, obtain judicial review of, quote, any final decision, unquote, of the Railroad Retirement Board. The Board here no longer contests that Petitioner Chris Stovic exhausted all the administrative remedies that were available to him before seeking this Court's review of the Board's April 3, 2014 letter denying Mr. Stovic's request to reopen his retirement benefits termination, and understandably so, as a quick review of the Board's own regulations made clear that no administrative remedies are available to those whose requests to reopen have been denied by the three-member Board. But he did ask for that to be reconsidered, didn't he, later in the year? I'm sorry. I'm sorry, Judge Henry. What was reconsidered? Wasn't there a later letter from the Railroad Board saying, yes, we meant what we said in April? Yes. As Mr. Stovic mistakenly tried to appeal the Board's April 3, 2014 decision, filing an H1A form with the Board, the Board replied to him in October of 2014, merely reaffirming and standing by his earlier decision. So the decision before that he's requesting review of before this Court is actually the April 3, 2014 letter. And in my opinion, the only remaining barrier, then, to this Court passing on the merits of Mr. Stovic's petition is deciding whether that April 3, 2014 letter constitutes, quote, any final decision of the Board. And in the context of the statute and under settled principles of administrative law, I think that the Board's decision fits comfortably within the statutory definition. The Board's decision marked, to paraphrase the Supreme Court in Bennett v. Speer, the consummation of the agency's decision-making process and carried with it the full weight of the authority of the highest authority within the Board, within the agency, that is, the three-member Board itself. Now, the Board comes before this Court and argues that decisions denying requests to reopen are categorically insulated from judicial review. And I'd like to spend the rest of my time this morning talking about the essentially three justifications the Board offers in support of its position and discuss why each of those justifications are misplaced. First, the Board relies heavily on the Supreme Court's 1977 decision, Califano v. Sanders, in which the Court decided that decisions denying requests to reopen under the Social Security Act are not reviewable under that statute. And instead of actually confirming the Board's position, the actual differences between the and that the Board's decision is reviewable. So let me ask you, you say that the Board is conflating who may seek review with the decision that may be reviewed. That's arguably one way to read the statute. But another way to read it is that since there's that reference back to subsection C, that the statute does have different language than the Social Security Act, but essentially it's setting up the same type of procedure. Now, warranted that the statute of limitations is different, but just as to the other part of your argument about conflating. Sure, Judge Rodgers. So I think that it would be a very odd way for Congress to have written this statute to use the phrase any final decision to refer back to the subsection C qualification that your Honor is referring to. And we know from just looking at 45 U.S.C. 355 itself that Congress knew how to use the term such as they did in the Social Security Act to refer back to a subset of final decisions. In numerous subsections under, in 355 itself, Congress uses the term such to qualify its in subsection D, in subsection E. Could have, but does the failure to do so necessarily require us to adopt your conflation argument? That's what I'm getting at. Sure, Judge Rodgers. And I think that the answer is it doesn't necessarily require the court to adopt my interpretation, but given the strong presumption in favor of judicial review of administrative action recognized most recently in the El Paso case by this court, in Cucano v. Holder by the Supreme Court in 2009, which requires clear and convincing evidence that Congress meant to preclude judicial review, it seems that if there is any doubt on the court's part as to which interpretation is the correct one, the tie should go to reviewability and to this court passing on the merits of Mr. Stoeck's petition. And even where the matter to be reviewed is a matter created by agency regulation? All the more so, in fact, where the matter being reviewed is created by agency regulation. In fact, in Cucano v. Holder, the court ended by noting the separation of powers concerns that should caution courts, and I'm quoting, for reading legislation absent clear statement to place in executive hands authority to remove cases from the judiciary's domain. So in fact, the fact that, and no one is arguing, by the way, that the Railroad Retirement Board has to give Mr. Stoeck the right to reopen his benefits determination, but having given him that, it would be quite odd, I think, to suggest that the board's actions, giving itself the power to do so, would insulate those decisions from judicial review. And I'd like to take a step back, because as your honors have noted, the board's position is that this subsection C language is kind of determinative here, and I'd like to offer a different view of the 355, of section 355, and what Congress was trying to accomplish. So if you look at, kind of go through 355, the board sets up, the board kind of bread and butter business is deciding and administering the benefits that it is charged with distributing, and the Congress in subsection B of 355 gives the board broad powers to create such processes as it seems proper and necessary to fulfill that duty. In subsection C, it discusses the kind of initial claim for benefits that trigger the entire process. When an applicant comes to the board and says, I deserve an unemployment benefit or a sickness benefit or under the Railroad Retirement Act an annuity, it describes the minimum due process requirements under the statute for those processes. And then in the judicial review provision, then, in subsection F, Congress was trying to say, we, in writing the statute back in 1937, having given the Railroad Retirement Board these broad powers, cannot predict all the processes and ancillary decisions that the board might need to require or to create, processes that the board might need to create as ante, and decide which of these, we can't predict which processes the board will create. So we're going to allow the people that are, we know, the universe of potential claimants in board decisions, that is, the people that claim benefits, as defined in the beginning clause of 355F, we're going to allow them, if they exhaust all the administrative remedies available to them, to obtain judicial review of any final decision, that is, of the final decisions that the board itself sees as necessary to administer and distribute the benefits that it's charged with administering. What is the end point? I mean, if not only the Railroad Board, but this court could be reviewing Mr. Stovek's, you know, 10th denial of a motion to reopen? Sure. A couple responses, Judge Henderson. First of all, the statute of limitations obviously still applies, so the one-year bar would bar any requests after a final decision. But moreover, you know, claims of repeated or frivolous litigation are certainly no stranger to this court, and the courts, as well as the administrative agencies, have ways of dealing with them. I submit that, you know, Rule 38 could be invoked if there were a case where a litigant was repeatedly making frivolous arguments before both the board and before this court. And the board, of course, has full authority to try and tab in those things itself. Well, I'm not talking about the same litigant. I'm talking about, you say it's a small group of people, but 25 a year or something like that, that we would be reviewing. I'm sorry, I couldn't hear the last part of it. I'm not talking about the same litigant doing it over and over again. I'm talking about 25 refusals to reopen a year that the board rejects and then we have to review. Sure. So the board itself notes that the potential universe in its brief on page, I think it's 24 or 35, excuse me, notes that the potential universe for claimants is actually quite small. So I don't think that that's a particularly large concern. And of course, the board itself can tab in its ability to reopen in any way it so chooses. It doesn't, as I said before, the board doesn't have to offer this benefit. This is an, it has given itself this power because to ensure greater accuracy of benefit determinations. In fact, if you look at 20 CFR 260.2 at the list of criteria it uses for deciding whether or not to reopen a benefits determination, most of them are actually geared towards reducing a claimant's benefit. And so I don't think that the board should be able to escape this review just because some people are complaining that they've done their job inaccurately. How do you explain the fairly consistent view of the other courts of appeals on this? Sure. So, you know, I would say that none of those courts, if you look through the seven, and I believe it's seven court of appeals that have decided the question and suggested no reviewability have done the close textual analysis necessary to understand exactly what Congress was doing here. Most of them have, like the board before you today, relied almost exclusively on the Supreme Court language. As I said earlier, it is inapplicable because of the clear textual differences between the two statutes or relied on this subsection C language, which is, as I argue, qualifies the class of petitioners at most, but certainly doesn't qualify by the way, all the class of petitioners. I think that's an open question, Your Honor. I think, as I said, the best way to look at what it's doing, what Congress is doing in that the beginning of 355 F is trying to get, use a shorthand to describe the, to broadly describe the total universe of claimants that could bring a claim. To be honest with you, I actually think it might be a null set. I'm not even sure who in other party under subsection C would be beyond the ones that are actually specifically identified claimants, employers, railroad, labor organizations. So you know what I'm asking? Does it grieve to modify all the other? So I agree with my final decision under subsection C. I guess it's a rule of the last antecedent issue. Right, right. So I think that it doesn't necessarily, sorry, excuse me, it does not qualify all the preceding categories. I think that what they were, what Congress was going for when it was talking about other parties agree was merely trying to describe and get at most broadly the universe of potential claimants. And it did that by looking at the kinds of decisions it knew Congress, sorry, the board was going to make. That is the initial regarding the initial claim for benefits. And so in doing that, it was really just you trying to get at a cash haul to make sure that everyone was included. That said, your honor, Mr. Sobeck is clearly a party who grieved by a decision under subsection six C because of the decisions that he's trying to get reopened are in fact subsection C decisions. So let me ask you in your reply brief, you say the board's position would preclude the review of revised decisions as well. Why is that so? In other words, if they grant and change his benefits to a different figure, a different amount, and he wants to challenge that, why doesn't that come under the discussion of subsection C that we've been talking about? Because your honor, as I read subsection C, it pertains merely to claims for benefits.  That's the kind of the title is every subsection refers to the claim. A reopening decision doesn't necessarily hinge on any claim at all. In fact, as I said earlier, most of the time, most of the criteria the board uses to decide whether they're open or for the board to sue a sponsor to initiate the reopening itself without any claim or applicant being brought or a claim being brought before it. So it's very hard for me to understand how, if the board is correct that a reopening decision is not a subsection C decision, how a revised decision would be when neither. Sort of a milk pro tonic. Right, exactly, exactly, your honor. And that said, the board offers a different definition of what it considers to be subsection C decisions. If you look at page, I think it's 27 of the red brief, they refer to their own regulation 20 CFR 260.1, which tries to define the list of subsection C decisions. But that regulation only defines it as that defines those decisions as those concerning, for example, a withdrawal or modification of a benefit. If that's the definition, I think all of these are subsection C decisions. And we can all agree that no, under any interpretation, Mr. Sevin's position would be reviewable. If there are no further questions, I'll reserve the right to hear my time. All right. Thank you. Ms. Chesley. Good morning. Contrary to amicus's interpretation, the language of the Retirement and Insurance Acts do not, does not allow this court jurisdiction to review the board's denial of reopening Mr.  It is not a final decision on the merits of an initial benefits ruling. Now, to directly respond to something that the amicus was just discussing, the board would consider a case in which the board reopens and revises benefits to actually become another initial benefits ruling, because in that case, it would have to be remanded back down to the initial benefits level, and then full appeal rights would attach to the revised decision. And I believe that is actually something that amicus stated in his opening brief, and then in this reply brief, actually changed it. So, anytime the board revises a ruling, a final decision, full appeal rights attach to that, and then it goes to the initial, the reconsideration, the hearings level, and then again, a case could be brought in the Court of Appeals. But that is not the case in Mr. Sovik's particular situation. So, the plain language of the acts, when taken in context of the entire statute, show that a final decision is a particular type of agency action, and not every agency determination is a final decision. The phrase, any final decision, is defined by the earlier phrase in the statute, final decisions under subsection C. That's not a definition, the prior, the earlier use. It's not, it is defined by... It doesn't say final decision means the following or something, it doesn't say that. No, but it reduces the category of any final decision, actually, it makes it somewhat smaller than to final decisions under subsection C. But shouldn't the word such appear there, then, any such final decision, like it did in Califano versus Sanders and many other decisions, many other statutes, you'll see the, any other such? It certainly could have appeared there, however it didn't, and however Congress's intent is clear, that it was not, that it was providing a review for only final decisions of initial benefits determinations, because in fact, the ability of the board to reopen someone's case is not in the Railroad Retirement Act at all, and it has never been in the Railroad Retirement Act. But you don't dispute it's a final decision? I would say it's not a final decision as a term of art. It's not a final, it's not a reviewable final decision. Right, but you agree it's a final decision? I agree that in sort of common parlance, yes, it's a decision. I mean, he could keep asking for it over and over again, so then there would be other decisions on the same topic, but as it is not reviewable, it is not reviewable under the Railroad Retirement Act. Now, it does not make sense that Congress would specifically write the Railroad Retirement Act to provide judicial review of something which is not in the Act, which is reopening. The reopening is simply a construct of the Railroad Retirement Board regulations, and similar to... When you say it would not make sense, you're saying it would be absurd, or what are you saying? I'm not saying it's not absurd in the terms of the jail break case where the jail is on fire, and then if the inmate escapes, then they're put to death because... I'm just saying it's illogical, basically. That you need to look at the entire context of the statute... Why would it be illogical for Congress to provide for judicial review of decisions like these? I'm saying that it would be... It's illogical to think that Congress intended specifically by its language to provide for judicial review of these decisions. Well, let me disaggregate the language from congressional intent. You said it would be illogical. Just as an abstract matter, why would it be illogical for Congress to provide for judicial review of decisions? I think if you look at the history of the Railroad Retirement Act, you can see the statute of limitations is there from the very first day the Act was written, whereas reopening is not there. It's never been there. Congress was specifically concerned about finality, and if you look at Sanders versus Califano's, which is... Actually, basically, you have to step back and look at the two statutes, the Social Security Act and the Railroad Retirement Act. Social Security Act provides for initial review, reconsideration, hearings, the appeals council review, and then review in the district court. The Railroad Retirement Act provides for initial review, reconsideration, a hearing, and then a board decision, and then appeal to the court of appeals. So the language in Sanders, which talks about any decision after a hearing, is actually sort of similar to the language in the Railroad Retirement Act, which talks about administrative exhaustion. Administrative exhaustion includes a hearing step. So even though it doesn't say hearing, it basically is incorporating the concept of a hearing. It's a key word that's different. Such. Such. Yes. Is in the Social Security Act and not here. Well, but I think that you have to step back and look at... Both of them are talking about a particular type of decision, a final decision after administrative exhaustion of all the levels, the initial, the reconsideration, the hearings, the board or the appeals council review, and then straight to the court. These are, they're exactly the same. This is why the other seven circuits have found that Sanders is persuasive. And although, and no circuit has found Amicus's interpretation to be persuasive. Even the two circuits that found jurisdiction did not use the interpretation of Amicus. That doesn't mean it's wrong. True. However, we pay close attention to the text and the text of the two statutes is different and I'm not sure it's completely illogical to have judicial review of arbitrary denials of motions to reopen. Well, there's definitely been no evidence that the board's decision is arbitrary. Exactly. And that's on the merits though. The question here is whether we even get to look at that question. Your theory, again, would allow completely arbitrary denial of a motion to reopen to evade judicial review, correct? Is that correct? That is correct. But that is, that's Congress's choice. That's Congress's intent. You have to look at the language of the statute in the entire context, similar to the recent Supreme Court decision in King v. Burwell. You cannot just cherry pick the language of any final decision. You have to look at it in the context of the entire statute. It's a final decision under subsection C, which is initial benefits rulings. And I would say that although, of course, King, I mean, that's cited frequently now for propositions like that, but the idea there was the statute just wouldn't function as designed. And I think the statute, as designed, as I said, the statute, the one-year statute of limitations was in there, that was in the 1937 Act. It has never been changed. The entire Railroad Retirement Act was completely rewritten in 1974, and that was never changed. Congress has never, ever put in the option for reopening. That is simply something that the board put in in a measure of equity. But Congress was concerned about finality. Well, so play that out. You're talking about practical concerns. What's the sky is falling? What's going to happen if their position is accepted here? Well, for example, let's take a look at Mr. Stoback. This is his third Court of Appeals case that he's brought. He just had this exact same issue dismissed for lack of jurisdiction in the Third Circuit. Once he's done here, he could also then go to the Seventh Circuit and bring this same case again. But isn't it easy enough, assuming this is true in particular cases, to say that the particular claimant's motion reopens got no merit? It is, but Congress did not intend for applicants to be able to file a motion for reopening, have it be denied, and then come to the Court of Appeals, in this case 17 years later, based on that denial, and then do it again, come back next week, file a motion for reopening, have it be denied, and then come back again. He can do this over and over and over again. That eviscerates the statute of limitation. It eviscerates Congress' intent for finality and judicial economy. And in this case, as an example, Mr. Stoback, he has brought his case. This is actually his third Court of Appeals case over a period of almost 20 years. And there has been no evidence anywhere that his benefits were incorrectly calculated. In fact, what he's arguing about is actually he doesn't like the way the method that the railroad retirement benefits have been calculated since 1974. He even admits that he has no new evidence in his case. And he's strictly arguing about the law. He doesn't like the way that the law has been written. And I think if you look at Califano versus Sanders, the Supreme Court basically showed that there did not need to be a presumption of judicial review in the Social Security context, which is similar for the railroad retirement benefits, because the presumption was not needed to enforce congressional design in enacting the statute because the congressional design was designed for finality. So, therefore, the presumption of judicial review is needed to enforce congressional intention. But here it's not needed because it's clear that congressional intention was just to have review of initial benefits decisions. And the Railroad Retirement Act itself has multiple layers of administrative review and up to one year to appeal, which is actually more generous than Social Security, which only has 60 days. And yet Congress has upheld in Sanders the fact that there is no judicial review option for Social Security recipients, which I may say that's actually 59 million Americans. Why does the board allow reopening motions? Pardon me? Why does the board allow reopening motions? Why did the board? Why does it, as a general matter, have a regulation? For purposes of equity. Because decisions, original decisions, could be wrong. Right. It could be wrong. It has various regulations. You know, if you have new evidence. It sort of mirrors the Social Security regulations. If within one year you can reopen it at any time, that's basically the same amount of time you'd have to appeal it. So you'd have to appeal it or you could try to get it reopened. And sometimes a claimant will try to get it reopened. It's still within the one year. Maybe it's denied. Then they just still go and appeal it to the Court of Appeals because it's still within that one period. Within four years, you have various levels of review. You have new evidence or clear errors on the case. But the point is that finality is not the end all and be all because the board itself allows reopening. The board allows reopening as a matter of equity. However, Congress was extremely concerned about finality. As I said, from 1937, that statute of limitations was put in the act. It has never been changed. It was never amended. And similarly, Congress has rewrote the entire Railroad Retirement Act in 1974, never put in anything about reopening. It's simply a creation of the board's regulations. So the equity concern arises in part that many of these are pro se benefit recipients who may not understand what's going on and need some additional explanation? I thought it was because these are subject to continual recalculation and recomputation as his was. They reduced or increased his Social Security and that reduced his railroad. Well, I mean, that's I'm asking the same question. I think it's Judge Rogers. What what is the equity involved? Is it because there is this continual, not continual, but cyclical changing of benefits? I mean, you know, the railroad retirement board is run by a three member board. There's a labor member, a management member and a sort of neutral chairman. So therefore, and it's an industry specific organization. So, you know, all the laws are partially created by its own industry. So it wants to make sure, you know, the railroad retirement board is also tied. I thought it was tied to the Social Security benefits. We also pay Social Security benefits. The you determine you don't determine we don't determine the Social Security. So isn't that what happened with this fellow? No, the Social Security. It's it's it is confusing. But basically what happens is you if you work for a railroad and you work for a non railroad organization, we take the Social Security money and we attach it. We add it to your railroad money and we pay you the money. And you usually get it earlier because you can retire earlier under railroad retirement. Then when you come into the Social Security benefit, you get a letter from Social Security saying, oh, here's our Social Security money. But you've already been getting it. You've been getting it the whole time. And so we say, well, basically, we're going to deduct that. So we're going to deduct that extra money that Social Security is now giving you because you already are getting it. But what happens with a lot of the claimants is they see the letter from Social Security and they think, oh, I'm going to get an extra five hundred dollars. They don't realize they've already been getting that extra five hundred dollars for several years, which is actually one reason that people get more money under the Railroad Retirement Act than under Social Security. Let me ask you this then. With someone like Stovek, does his Social Security payment change as other Social Security recipients' payments change? Like cost of living increases? Yes. Yes. And he can appeal every cost of living increase. Every time there's a new cost of living increase, that's a new initial benefit determination. He could appeal that. But he's still trying to appeal his initial benefits determination from 17 years ago. So let me just be clear. Your response to Judge Henderson was that once you start receiving Social Security benefits, then that amount is deducted. That is a new initial determination? And therefore you get judicial review? I believe yes. I believe that would be a new judicial determination. Because I believe that that was his 99 cases. The 99 board decision was based on the receipt of the Social Security benefits. He had an earlier board decision, which I think was in 1996, which he also didn't appeal. And that was really just based on the vested dual benefit, which I discussed a little bit in our brief, which is really confusing. But the 99 case, I believe, was his receipt of the Social Security benefits. But he already was receiving them. He just didn't realize it. So railroad retirement, is there cost of living? Or it's an initial sum that there is cost of living? There's an initial sum, and then you get cost of living, just like Social Security. I mean, basically it is. It's Social Security plus a pension supplement. Just to be clear, every time there's a change in the amount of money he receives because of a cost of living adjustment, whether it's under the Railroad Act or the Social Security Act, that is a new initial determination? Yes, but just as far as the cost of living increase. And that's the same with Social Security. So just to be clear, if I was receiving $1,000 a month and then cost of living kicks in and I'm receiving $700 a month, even though those are just automatic calculations, arithmetic calculations, that $700 determination is viewed by the board as an initial decision? Yes. The cost of living increase, yes. Okay, just wanted to be clear about that. So Mr. Stovart can keep coming back, keep coming back, keep coming back. Only about the cost of living increase. I don't understand what that means when you say only. I'm receiving $700, and the board says that's because of a 2% cost of living adjustment. It would be. So what can he appeal? It would be more like you were receiving, say, $700, and you'd get an extra $30 because of the cost of living adjustment. So now you're getting $730. And we'll clearly say that in the information you would get. Then you can appeal the $30. You can say, well, you know, I don't think that's correct. I think it should be $32. That becomes another initial benefit. But then that gets deducted from the railroad. Well, we have cost of living increases. For somebody like Stovart whose grandfather gets them both. The grandfather is a totally separate issue from the deduction of the Social Security. That's the vestigial benefits. The deduction of the Social Security is really just a procedural issue because they're already getting the Social Security. So they can't get it twice. That's the thing. It's just sort of the way the system is that it's sometimes difficult to understand that. Well, you should have quoted Amicus' brief where he says calculating Stovart's benefits under the RRA is incredibly complicated. It is. And Amicus and I actually have discussed it. We both were trying to make sure that his benefits were correctly calculated, which they are. But if the Court has no further questions. All right. Thank you. Does Mr. Walker have any time left? Why don't you take two minutes if you need to. Thank you, Your Honor. I'll just make a couple quick points in response. First, counsel argued that it doesn't make any sense for Congress to have allowed for judicial review of any final decision beyond the initial benefits determination. In particular, invoking Congress's concern for finality. I don't think that's true in a world as here where Congress has provided that the board may create such procedures and hearings as is necessary to administer the act. Congress was, in its infinite wisdom, knew they couldn't predict what kinds of procedures the board would find necessary. So it, ex ante, allows for judicial review of any final decision without the textual qualification that the board asked the court to read into it. Second, the counsel of the board referenced the previous Third Circuit decisions. This is, to be clear, Mr. Stovart's first request for a reopening. The previous Third Circuit decisions were one he, in 1999, prematurely sought review before he had exhausted his administrative appeals of the initial or the revised decision. And then a couple of years ago in 2013, when the board, at least in Mr. Stovart's mind, was not adequately responding to his request for information, tried to go to the Third Circuit and they dismissed again for lack of restriction because he, again, had not administratively exhausted his options. But this was, as I said, his first request for reopening. The board does not dispute that. And lastly, I just want to make a point about King v. Burwell. In King v. Burwell, the court used context to kind of undermine, or I shouldn't say undermine, but change or alter the otherwise plain meaning of a phrase in a statute. Here, the board is trying to use context. Well, here, the context actually confirms the plain meaning of the statute, which is that any final decision of the board, here Mr. Stovart's denial, the denial of Mr. Stovart's request, is reviewable. Thank you. All right. Mr. Walker, you were appointed by the court to represent Mr. Stovart. And I'm sure you didn't realize you needed to be an accountant as well.  Thank you, Judge Henderson.
judges: Henderson, Rogers, Kavanaugh